LI v FELDT (AFTER REMAND)

GARCIA v CITY OF JACKSON (AFTER REMAND)

Docket Nos. 84303, 85365. Argued November 8, 1989 (Calendar Nos. 4-5). Decided April 30, 1990.

Chen Li, a passenger of an automobile involved in an automobile accident in Ann Arbor, brought an action in the Washtenaw Circuit Court against, inter alios, the City of Ann Arbor and two of its engineers, Kenneth Feldt and John Robbins, alleging negligence in the timing of the traffic signals along the road on which the accident occurred. The court, William F. Ager, Jr., J., granted summary disposition for the defendants on the ground that the statute of limitation had run with respect to the negligence claim. An amended complaint asserting intentional nuisance was dismissed on the ground that it merely restated the negligence claim. The Court of Appeals, SAWYER, P.J., and SULLIVAN and E. M. THOMAS, JJ., affirmed in part and reversed in part, finding that the plaintiff had stated a valid intentional-nuisance claim and that intentional nuisance was an exception to governmental immunity (Docket No. 93688). The Supreme Court remanded the case to the Court of Appeals for reconsideration in light of *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139 (1988). On remand, the Court of Appeals, SAWYER, P.J., and BEASLEY and SULLIVAN, JJ., reinstated its initial judgment, and held that the intentional-nuisance exception to governmental immunity had not been abrogated by *Hadfield* (Docket No. 109337). The defendants appeal.

Manuel Garcia, for himself and as personal representative of the estate of Javier Garcia, deceased, and others, brought an action in the Jackson Circuit Court against the City of Jackson as a result of the drowning of Javier Garcia in a city retention pond, alleging nuisance per se and nuisance in fact with regard to the pond, and asserting that because of a previous drowning in the pond, the city knew of the danger and should have taken

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 2, 87, 163, 699.

See the Index to Annotations under Governmental Immunity or Privilege; Nuisances.

more precautions. The court, James G. Fleming, J., granted summary disposition for the defendant, but allowed the plaintiffs to amend their complaint. Summary disposition for the defendant again was granted on allegations only of nuisance per se. After the plaintiffs filed a second amended complaint, alleging only wilful and wanton misconduct, the court once again granted summary disposition for the defendant, holding that the plaintiffs had failed to allege elements of a claim in avoidance of governmental immunity. The Court of Appeals, Bronson, P.J., and R. B. Burns, J. (R. C. Kaufman, J., concurring), reversed, holding that, although nuisance had not been expressly asserted in the complaint, the plaintiffs had sufficiently pled intentional nuisance and that the claim was not barred by governmental immunity (Docket No. 84513). The Court certified a conflict, and the Supreme Court remanded the case for reconsideration in light of *Hadfield.* On remand, the Court of Appeals, Cynar, P.J., and Wahls, J. (MacKenzie, J., dissenting), reversed the judgment of the trial court, finding that intentional nuisance had been pled and that *Hadfield* did not overrule the intentional-nuisance exception to governmental immunity (Docket No. 109324). The defendant appeals.

In an opinion by Chief Justice Riley, joined by Justices Brickley, Cavanagh, and Boyle, the Supreme Court *held:*

On the basis of the facts of these cases, the defendants are immune from liability as governmental entities for intentional nuisance because intentional nuisance is not a recognized common-law exception to governmental immunity.

Prior to July 1, 1965, no intentional-nuisance claim was recognized which could escape governmental immunity and there is no basis for finding such an exception now. The Court of Appeals improperly found an exception to governmental immunity on the basis of intentional nuisance. Remand is required to consider the existence of nuisance per se and public nuisance exceptions to governmental immunity, and their applicability in these cases, if and to the extent they were properly raised in the Court of Appeals.

Justice Archer concurred in the result only.

Reversed and remanded.

Justice Griffin, concurring in part and dissenting in part, stated that the terms "governmental agencies," as used in the first sentence of § 7 of the governmental immunity act, and "state," as used in the second, are not interchangeable. While "governmental agencies" is defined as "the state, political subdivisions, and municipal corporations," "state" does not embrace municipalities and other forms of lower government.

The fundamental purposes of the governmental immunity act were to restore immunity to municipalities, grant immunity to all levels of government when engaged in the exercise or discharge of a governmental function, and prevent judicial abrogation of governmental and sovereign immunity.

The statutory prohibition of modification or restriction of immunity specifically applies to the state and not to other governmental agencies. The second sentence of § 7 merely was intended to prevent further erosion of the state's common-law immunity, rather than preserve any common-law exceptions to governmental immunity.

Unless the activity of the municipality falls within one of the five narrowly drawn statutory exceptions, the only question remaining in these cases is whether the activity at issue is a governmental function as defined by the Legislature. Because the question whether either nuisance per se or public nuisance is a common-law exception to governmental immunity was not preserved for appeal, these cases should not be remanded to the Court of Appeals.

Justice Levin, writing separately, stated that because nuisances have not been classified on the basis of whether they are intentional or nonintentional, and accordingly there is no separate category of intentional nuisance, there is no need to decide whether there is an intentional-nuisance exception to governmental immunity. Nuisance per se and public nuisance are recognized categories of nuisance. The question whether there is a nuisance per se or public nuisance exception to governmental immunity should be decided in a case where the court concludes that factually there is a nuisance per se or a public nuisance.

170 Mich App 256; 428 NW2d 36 (1988) reversed.

174 Mich App 373; 435 NW2d 796 (1989) reversed.

GOVERNMENTAL IMMUNITY — EXCEPTIONS — INTENTIONAL NUISANCE.
   Intentional nuisance is not a recognized common-law exception to governmental immunity (MCL 691.1407; MSA 3.996[107]).

*Pauline R. Rothmeyer* for the plaintiff in *Li.*

*Mark T. Light* for the plaintiff in *Garcia.*

Office of the City Attorney (by *R. Bruce Laidlaw,* City Attorney) for the defendants in *Li.*

*Stanton, Bullen, Nelson, Moilanen & Klaasen,*

*P.C.* (by *Charles A. Nelson*), for the defendant in *Garcia.*

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *A. Michael Leffler,* Assistant-in-Charge, and *Michael C. McDaniel,* Assistant Attorney General, for the Attorney General.

### AFTER REMAND

RILEY, C.J. These cases were consolidated for purposes of appeal to decide whether defendants are immune from liability on the basis of their status as governmental entities on the facts of these cases. We hold that defendants are immune for an intentional nuisance because intentional nuisance is not a recognized common-law exception to governmental immunity.

I

#### A. *LI v FELDT*

On May 5, 1983, defendant Chou Yu-Feng Wong was driving on Pontiac Trail in Ann Arbor. In the front passenger seat was plaintiff Chen Li. In the back seat was the owner of the car, defendant Chu-Fen Wong. Chou Yu-Feng Wong ran a red light at the corner of Pontiac Trail and Barton Drive and collided with another vehicle driven by defendant Becky Belknap. Plaintiff suffered injuries.

Plaintiff filed a complaint on March 11, 1986. Among the defendants were the City of Ann Arbor and two of its traffic engineers, Kenneth Feldt and John Robbins. Plaintiff alleged negligence[1] on the

---

[1] The claim was brought pursuant to the highway liability exception, MCL 691.1402; MSA 3.996(102), to the governmental tort liability act.

part of the city and its engineers in the timing of the traffic signals.

The city moved for summary disposition, which was granted by the trial court because the statute of limitation had run with respect to the negligence claim. Plaintiff filed an amended complaint, asserting that the city intentionally created a nuisance in setting the cycle for the traffic light. The court found that the new complaint simply restated the negligence claim, and the complaint was dismissed.

Plaintiff appealed in the Court of Appeals, which affirmed in part and reversed in part the decision of the trial court, finding that plaintiff had stated a valid intentional-nuisance claim, and that intentional nuisance was an exception to governmental immunity. 162 Mich App 767; 413 NW2d 493 (1987).

Defendants applied for leave to appeal in this Court. On May 31, 1988, this Court remanded[2] the case to the Court of Appeals for reconsideration in light of the decision in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988). On remand, the Court of Appeals held that the intentional-nuisance exception to governmental immunity had not been abrogated by *Hadfield.*[3] 170 Mich App 256; 428 NW2d 36 (1988).

### B. GARCIA v CITY OF JACKSON

Defendant City of Jackson is the owner of the Holton Dam. One of the purposes of the dam is to

---

[2] 430 Mich 882 (1988).

[3] As in *Garcia v City of Jackson (On Remand),* 174 Mich App 373; 435 NW2d 796 (1989), the Court of Appeals found that a three-justice plurality finding no intentional-nuisance exception was not enough to overrule prior precedent. The Court would not lend Justice BOYLE's concurring vote to the section of the plurality opinion overruling the intentional-nuisance exception.

control flooding on the Grand River. To accomplish this goal, there is an underground conduit or pipe which draws water from a retention pond above the dam, and diverts the river underneath downtown Jackson.

On June 15, 1981, a young boy drowned when he was swimming in the pond and was pulled into the pipe by the current. Thereafter, in response to citizen action, the city contracted with a company to conduct a safety-enhancement study of the dam. Also, the city posted three signs. Two stated, "No Swimming," and one stated, "No Swimming by Order of City of Jackson/Undertow to River Conduit Entrance."

On February 26, 1983, before further safety enhancements were undertaken, Javier Garcia and William Sisk were at the pond upstream from the dam. Garcia decided to go swimming, despite warnings from Sisk and despite the posted signs. After jumping into the water a second time, Garcia was drawn by the undertow into the pipe and drowned.

On June 23, 1983, Javier Garcia's family and the personal representative of his estate filed suit against the City of Jackson. Plaintiffs' first complaint alleged nuisance per se and nuisance in fact. Plaintiffs also asserted that defendant knew of the danger and should have taken more precautions after the first drowning. The trial court granted a motion for summary disposition in favor of defendant, but allowed plaintiffs to file an amended complaint. Plaintiffs' amended complaint alleged only nuisance per se. After summary disposition for defendant again was granted, plaintiffs filed a second amended complaint, alleging only wilful and wanton misconduct. The court once again ordered summary disposition in favor of defendant because plaintiffs failed to allege ele-

ments of a claim in avoidance of governmental immunity.

The Court of Appeals reversed, holding that although nuisance was not expressly asserted in the complaint, plaintiffs had sufficiently pled intentional nuisance, a claim not barred by governmental immunity. 152 Mich App 254; 393 NW2d 599 (1986). The Court of Appeals certified a conflict, and this Court held this case in abeyance pending a decision in *Hadfield, supra.* Once *Hadfield* was decided, this Court remanded[4] the instant case to the Court of Appeals for reconsideration in light of *Hadfield.* After remand, the Court of Appeals found that intentional nuisance had been pled and that *Hadfield* did not overrule the intentional-nuisance exception to governmental immunity.[5]

On April 7, 1989, we granted leave to appeal in the instant case, consolidating it with *Li* to determine whether defendants are immune from liability on the basis of their status as governmental entities.[6]

II

The dispute in *Li* and *Garcia* centers on the limited issue of the scope of the nuisance exception to governmental immunity; specifically, whether it

[4] 430 Mich 877 (1988).

[5] The Court of Appeals stated:

It is difficult to extract the conclusion that there is no intentional nuisance exception to governmental immunity since in *Hadfield,* which is the last word on the matter, the majority of the justices did not vote to override prior precedent concerning the intentional nuisance exception to governmental immunity so as to establish any new binding precedent for future cases. There was a majority for the result only. [174 Mich App 376.]

[6] 432 Mich 891 (1989).

entails intentional nuisance. A majority of this Court in *Hadfield* found that § 7 of the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, mandates an historical approach to defining the proper scope of the nuisance exception.[7] Section 7 of the governmental tort liability act states:

---

[7] In *Hadfield*, a majority of this Court found that the governmental tort liability act preserved common-law exceptions to immunity. Including the three-justice plurality which adopted the historical analysis, six participating justices agreed that the Legislature intended to codify common-law exceptions. Justice BOYLE stated:

> The basic premise of the lead opinion is that § 7 of the governmental tort liability act requires a continuation of the nuisance exception as formulated prior to its enactment in 1964 and as amended by 1970 PA 155. *I agree that the Legislature intended to codify the common law of governmental immunity* . . . . [*Hadfield*, p 204. Emphasis added.]

Justice LEVIN, in a separate opinion, also agreed that at least the trespass-nuisance exception survived the enactment of the governmental tort liability act. *Id.*, p 209.

In yet another opinion, Justice ARCHER stated:

> I agree with the lead opinion that under the second sentence of § 7 *the exceptions to governmental immunity which existed prior to the enactment of the statute are retained.* [*Id.*, p 214. Emphasis added.]

Thus, a majority of this Court has settled on an interpretation of the second sentence of § 7 as recently as March 29, 1988. In his concurrence/dissent, Justice GRIFFIN reads § 7 not to include common-law exceptions to immunity. Justice GRIFFIN urges an interpretation of § 7 which would undercut the studied effort manifested in the *Hadfield* opinions.

Even if the legislative intent behind this sentence were not clear, it has been said:

> Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. . . . This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation. [*Burnet v Coronado Oil & Gas Co*, 285 US 393, 406; 52 S Ct 443; 76 L Ed 815 (1932) (Brandeis, J., dissenting), quoted in *Abendschein v Farrell*, 382 Mich 510, 517; 170 NW2d 137 (1969).]

Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. *Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.* [MCL 691.1407; MSA 3.996(107). Emphasis added.]

A majority in *Hadfield* agreed that the second sentence of § 7 preserved judicially created exceptions to immunity which were formulated before July 1, 1965.[8] Accordingly, any case-law exceptions

---

[8] With reference to the second sentence of § 7, *Thomas v Dep't of State Hwys,* 398 Mich 1, 11; 247 NW2d 530 (1976), states in part, "[o]bviously this language must be construed as an 'affirmation' of case-law precedent on the subject of the state's immunity."

Justice RYAN adopted this interpretation in his dissenting opinion in *Rosario v City of Lansing,* 403 Mich 124, 146; 268 NW2d 230 (1978):

[I]n order to determine the scope of the now codified immunity, we must determine the scope of its antecedent "existing immunity." Since the common-law or "existing immunity" doctrine included certain judicially created exceptions which defined its limits, the legislatively codified immunity is limited and defined by the same exceptions. One of these exceptions is here in issue: the doctrine of "nuisance."

In the instant case, the concurrence/dissent suggests that the "legislative intent underlying the second sentence of § 7 could merely have been to 'affirm' the state's preëxisting *absolute* [no governmental function limitation] sovereign immunity . . . ." *Post,* p 601. However, in *Ross v Consumers Power (On Rehearing),* 420 Mich 567, 606; 363 NW2d 641 (1984), this Court stated:

[A]t the time § 7 was enacted, the state was immune from tort liability when it was engaged in the exercise or discharge of a governmental function . . . . [See also *id.,* p 602, n.15.]

Further support for the view that the state did not have absolute immunity prior to the enactment of the statute can be found in *Thomas v Dep't of State Hwys, supra,* p 11; *Manion v State Hwy Comm'r,* 303 Mich 1, 19; 5 NW2d 527 (1942); *Daszkiewicz v Detroit Bd of Ed,* 301 Mich 212, 220; 3 NW2d 71 (1942).

The concurrence/dissent also suggests that the Legislature intended

devised after this date would not escape govern-

to treat sovereign (state) and nonsovereign entities differently with respect to immunity. However, the stated purpose of the governmental tort liability act is to "make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in the exercise or discharge of a governmental function . . . ." Preamble to MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* Also, a member of the special committee which drafted the act stated that the committee "sought to achieve legislation that would put all government on the same basis . . . . This statute puts all agencies of government on the same footing with regard to tort liability." Abels, *Report of committee on tort liability,* 28 NIMLO Municipal L R 432, 464 (1965). Therefore, § 7 should be read to give effect to the stated purpose of the act.

Furthermore, the nature of governmental immunity is such that there is no reason to treat the state and local entities differently. The reasoning behind governmental immunity was set forth in *Nicholson v Detroit,* 129 Mich 246, 258-259; 88 NW 695 (1902):

> The true theory is that the township or city represents the State in causing these things to be done, and, like the State, it enjoys immunity from responsibility in case of injury to individuals . . . [because, in] imparting a portion of its powers, the State also imparts its own immunity.

Another reason to read § 7 as preserving common-law exceptions is set forth in Cooperrider, *The court, the legislature, and governmental tort liability in Michigan,* 72 Mich L R 187, 279-280 (1973). The trespass-nuisance claim was valid long before the creation of the governmental function defense. Mr. Cooperrider went on to state:

> It reflects one of the strongest claims for relief that can be asserted . . . . There is nothing in their public expressions to indicate that those who drafted the statute had any such change in mind; indeed, one of them summed the statute up in these terms: "The net effect of Act 170, 1964, is to largely return to municipal corporations the position they enjoyed prior to the decision of the *Williams* [*v Detroit,* 364 Mich 231; 111 NW2d 1 (1961) (abrogating governmental immunity for municipalities)] case." This is surely a situation where the legislature should be expected to express an intent to make an important change in the law in words incapable of being misunderstood, rather than relying upon implication. . . . [The governmental function defense] has never been applied by the Michigan court to protect any governmental agency against liability in a situation recognized to be within the nuisance-trespass category. [The first sentence], I submit, should be seen as a restoration of the governmental-function defense as it existed in the case law, alongside the nuisance-trespass head of liability.

mental immunity. We adopt the historical approach endorsed by a majority of this Court in *Hadfield.*

The plurality opinion in *Hadfield*[9] undertook to explore the extent of judicially created nuisance exceptions prior to July 1, 1965. A clearly recognized exception was the "intruding-nuisance" or "trespass-nuisance" exception. *Hadfield, supra,* p 169, defined trespass-nuisance as a "trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and resulting in personal or property damage."[10] Trespass-nuisance was the only common-law exception specifically acknowledged by the *Hadfield* plurality.

After recognizing the trespass-nuisance cause of action, the plurality in *Hadfield* applied the historical analysis test to intentional nuisance and rejected it as a common-law exception to governmental immunity.

---

[9] Justice BRICKLEY wrote the plurality opinion joined by Chief Justice RILEY and Justice CAVANAGH.

[10] The Taking Clause of the constitution rests at the foundation of the trespass-nuisance exception. Justice RYAN wrote about the taking rationale in his dissent in *Gerzeski v Dep't of State Hwys,* 403 Mich 149, 170; 268 NW2d 525 (1978), which is cited in *Hadfield, supra,* p 165:

> In [intruding-nuisance] cases the potentially dangerous instrumentality or condition literally moves from government-owned land onto adjacent property. Consequently, the neighboring premises and its occupants are subject to either the creation of a risk foreign to the premises or direct and immediate injury. When this transpires the government effectively deprives an owner of the useful possession of that which he owns. This Court views such action as a public taking. Under this analysis the state is obliged to pay reasonable compensation for damages ensuing from such "taking" in accordance with the Constitution of the State of Michigan, Const 1963, art 10, § 2. [Citations omitted.]

Note that in its definition of trespass-nuisance, the *Hadfield* Court did not restrict the source of the intrusion to government-owned land.

The two cases which initially formulated an intentional-nuisance exception are *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978),[11] and *Gerzeski v Dep't of State Hwys,* 403 Mich 149; 268 NW2d 525 (1978).[12] In applying the historical analysis, we note that prior to July 1, 1965, there was no recognized intentional-nuisance claim which could escape governmental immunity. Since there was no recognized pre-1965 intentional-nuisance exception, there is no basis for finding such an exception at this time. Thus, assuming that the Court of Appeals was correct in both cases in finding that plaintiffs had pled intentional nuisance, the panels improperly found an exception to governmental immunity on the basis of intentional nuisance. We hold that the historical approach defining the scope of the nuisance exception to governmental immunity mandates a finding that intentional nuisance is not an exception to governmental immunity.

[11] In *Rosario,* a nineteen-month-old child drowned after falling into an open sewer drain on city property. Justice FITZGERALD, joined by Chief Justice KAVANAGH and Justice LEVIN, found a broad nuisance-in-fact exception to governmental immunity. A concurrence written by Justice BLAIR MOODY, JR., and joined by Justice WILLIAMS, found that only intentional nuisance in fact was an exception, not negligent nuisance in fact.

Justice MOODY defined intentional nuisance as the "intent[ ] to bring about the conditions which are in fact found to be a nuisance." *Rosario,* p 142.

However, there is confusion in the Court of Appeals concerning the elements of intentional nuisance. Most Court of Appeals panels find intentional nuisance when a defendant either acted for the purpose of causing harm or knew that harm was substantially certain to follow. See *Hadfield, supra,* p 172, n 14. Since neither interpretation of intentional nuisance was recognized prior to 1965, we find it unnecessary to resolve this conflict.

[12] In *Gerzeski,* two young boys drowned after falling through the ice on an artificial pond owned by the Highway Department. While looking for the children, the father of one of the boys fell through the ice and drowned. The same three-justice plurality as in *Rosario* again held in favor of an expanded nuisance exception. In the concurrence, Justice MOODY and Justice WILLIAMS would have limited the nuisance-in-fact exception to intentional nuisance.

The *Hadfield* plurality left undecided whether nuisance per se and limited public nuisance claims are exceptions to governmental immunity. We remand these cases to the Court of Appeals to consider the existence of nuisance per se and public nuisance exceptions to immunity, and their applicability to these cases if, and to the extent that, they were properly raised before the Court of Appeals.

Accordingly, the decisions of the Court of Appeals in both *Li* and *Garcia* are reversed. We remand to the Court of Appeals for further consideration.

BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RILEY, C.J.

ARCHER, J., concurred only in the result.

GRIFFIN, J. (*concurring in part and dissenting in part*). Although I concur in the majority's holding that intentional nuisance is not an exception to governmental immunity, I write separately to register my disagreement with the "historical approach" relied upon to reach that result, and to dissent from that portion of the opinion which would remand these cases to the Court of Appeals.

It is important to keep in mind that these cases involve the immunity of governmental agencies other than the state.[1] The first sentence of § 7 of the governmental immunity act provides:

Except as otherwise provided in this act, all

---

[1] The City of Ann Arbor and the City of Jackson are "municipal corporations" within the definitions provided by the governmental tort liability act. MCL 691.1401(1)(a); MSA 3.996(101)(1)(a). Although municipal corporations, along with the state, are within the definition of "governmental agency" MCL 691.1401(1)(d); MSA 3.996(101)(1)(d), municipal corporations are not within the definition of "state." MCL 691.1401(1)(c); MSA 3.996(101)(1)(c).

*governmental agencies* shall be immune from tort
liability in all cases wherein the government
agency is engaged in the exercise or discharge of a
governmental function. [Emphasis added.]

The second sentence provides:

Except as otherwise provided in this act, this act
shall not be construed as modifying or restricting
the immunity of *the state* from tort liability as it
existed before July 1, 1965, which immunity is
affirmed.[2] [Emphasis added.]

The majority today, as did the plurality in *Had-
field v Oakland Co Drain Comm'r,* 430 Mich 139,
170; 422 NW2d 205 (1988) (opinion of BRICKLEY, J.),
asserts that the second sentence of § 7 requires an
historical analysis of common-law exceptions to
*governmental* immunity.[3] The plurality opinion in
*Hadfield,* which forms the basis of today's decision,
conceded:

Taken alone, the first sentence of § 7 does sup-
port a narrow interpretation of the act, to preclude
recognition of *any* nuisance exception. The Legisla-
ture's use of the word "tort" to describe the liabil-

---

[2] MCL 691.1407; MSA 3.996(107), as amended by 1986 PA 175.
(Emphasis added.)

[3] Sovereign immunity " 'is a specific term limited in its application
to the State and to the departments, commissions, boards, institu-
tions, and instrumentalities of the State.' " *Ross v Consumers Power
(On Rehearing),* 420 Mich 567, 597; 363 NW2d 641 (1984), quoting
*Myers v Genesee Co Auditor,* 375 Mich 1, 6; 133 NW2d 190 (1965)
(opinion of O'HARA, J.).

"Over the years, by judicial construction, this 'sovereign'
immunity has been transmogrified into 'governmental' immu-
nity and made applicable to the 'inferior' divisions of
government . . . but with an important distinction. These sub-
divisions of government enjoyed the immunity only when en-
gaged in 'governmental' as distinguished from 'proprietary'
functions." [*Ross, supra,* p 597, quoting *Myers, supra,* pp 8-9.]

ity from which governmental agencies are to be held immune exemplifies the breadth of the intended immunity. There is no doubt that nuisance is a tort and that liability for nuisance would be within the scope of statutory governmental immunity as expressed in the first sentence of § 7. [*Id.,* p 147. Emphasis added.][4]

Nonetheless, the *Hadfield* plurality rejected a restrictive interpretation of § 7 by contending that "the second sentence of § 7 retains preëxisting *governmental* immunity law except where provided otherwise in the act." *Id.* (Emphasis added.)

However, neither the plurality opinion in *Hadfield,* nor the majority opinion today, addresses the significance of the Legislature's use of the terms "governmental agencies" in the first sentence of § 7 and "state" in the second.[5] A literal reading of the second sentence of § 7 seems, at most, to require an historical analysis of the *state's* common-law immunity.[6] The significance of the Legis-

---

[4] See also *Ross v Consumers Power (On Rehearing),* n 3 *supra,* p 618:

[T]he immunity from tort liability provided by § 7 is expressed in the broadest possible language—it extends immunity to *all* governmental agencies for *all* tort liability *whenever* they are engaged in the exercise or discharge of a governmental function.

[5] See also *Gerzeski v State Hwy Dep't,* 403 Mich 149; 268 NW2d 525 (1978). In holding that a nuisance cause of action survived the act, the Court "did not appear to have considered" the second sentence of § 7. *Ross v Consumers Power (On Rehearing),* n 3 *supra,* p 703, n 64 (LEVIN, J., dissenting in part).

[6] Justice BRICKLEY's *Hadfield* opinion cites *Thomas v State Hwy Dep't,* 398 Mich 1, 11; 247 NW2d 530 (1976), for the principle that the second sentence of § 7 affirmed the case-law precedent of governmental immunity, thus implying that an historical analysis is required. However, *Thomas* concerned the immunity of a *state* agency. Indeed, few commentators or court opinions have expressly concluded that the second sentence of § 7 codifies the common-law exceptions to *governmental* immunity. Most merely agree that the second sentence of § 7 codifies the common-law exceptions to *sovereign* immunity. See,

lature's use of "governmental agencies" in the first sentence and the "state" in the second sentence is underscored by the definitions expressly given those terms in the act. "Governmental agency" is defined as "the state, political subdivisions, and municipal corporations." The "state," on the other hand, is defined as "the state of Michigan and its agencies, departments, [and] commissions . . . ."[7] The terms are not interchangeable. The statutory provision prohibiting modification or restriction of immunity is specifically applied to the "state," a term which does not embrace municipalities and other forms of lower government. Definitions supplied by the Legislature in the statute are binding

e.g., *Ross v Consumers Power (On Rehearing)*, n 3 *supra,* p 595; ("the second sentence statutorily affirms the law of *sovereign [state] immunity* from tort liability"); *Thomas v State Hwy Dep't, supra,* p 11 ("this language must be construed as an 'affirmation' of case-law precedent on the subject of the *state's* immunity"); *Pinchette v Manistique Schools,* 403 Mich 268, 278, n 2; 269 NW2d 143 (1978); *Perry v Kalamazoo State Hosp,* 404 Mich 205, 210-211; 273 NW2d 421 (1978) ("historical context in which this statute was enacted suggests that the Legislature's intent in adopting this act was to codify the existing common-law or judge-made immunity *of the state*"); *Killeen v Dep't of Transportation,* 432 Mich 1, 19; 438 NW2d 233 (1989) (RILEY, C.J., dissenting) ("[the] governmental immunity statute codified the common-law principle of *sovereign* immunity"). See also Weller, *Sovereign immunity in Michigan: Sources and outline,* 6 Cooley L R 217, 254, n 237 (1989) ("the plain language of § 7[1] of the . . . Act seems to provide a specific exclusion for the state from those common law exceptions to governmental [but not sovereign] immunity that existed before July 1, 1965"). But see *Rosario v City of Lansing,* 403 Mich 124, 146; 268 NW2d 230 (1978) (RYAN, J., dissenting); DeMars, *Intentional nuisance in fact: Should it be a bar to a governmental function defense in Michigan?,* 1981 Det C L R 771, 790.

Professor Cooperrider's article, cited prominently by the plurality in *Hadfield,* did not rely on the second sentence of § 7 in arguing that nuisance trespass survived the enactment of the governmental tort liability act. Instead, Cooperrider argued that given the long history of the common-law nuisance exception, the Legislature would have expressly abolished it had that been their intent. Cooperrider, *The court, the legislature, and governmental tort liability in Michigan,* 72 Mich L R 187, 279-281 (1973).

[7] MCL 691.1401; MSA 3.996(101).

on the judiciary.[8] Thus, assuming arguendo that the second sentence of § 7 requires an historical analysis, it should be applied to the "state" and not other "governmental agencies."

The underlying premise of the *Hadfield* plurality opinion appears to be that the Legislature's intent to make uniform the immunity of all levels of government requires that the historical analysis purportedly required by § 7 applies to all levels of government, despite the express limitation of the purported historical analysis to "the state."[9]

Although the act's title declares its purpose is "to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments," the uniformity of immunity intended by the Legislature does not necessarily include both governmental and nongovernmental functions. The act's title qualifies the uniformity purpose by providing that the Legislature sought to make uniform the liability of all government *"when engaged in the exercise or discharge of a governmental function . . . ."* Simply because the Legislature claimed immunity on behalf of all levels of government "when engaged in the exercise or discharge of a governmental function" does not necessarily compel the conclusion that the state has no immunity when *not* engaged in the exercise or discharge of a governmental function. Indeed, the governmental tort liability act was " '[d]rafted under the apparent assumption that the state and its agencies enjoyed a total sovereign

---

[8] *People v Smith,* 246 Mich 393; 224 NW 402 (1929); *W S Butterfield Theatres, Inc v Dep't of Revenue,* 353 Mich 345, 350; 91 NW2d 269 (1958); *McRaild v Shepard Lincoln Mercury, Inc,* 141 Mich App 406; 367 NW2d 404 (1985); 1A Sands, Sutherland Statutory Construction (4th ed), § 20.08, p 88.

[9] The *Hadfield* plurality considered its "historical approach" to be consistent with *Ross,* wherein this Court stated that "[t]he governmental immunity act was intended to provide uniform liability and immunity to both state and local governmental agencies." *Ross,* n 3 *supra,* p 614.

immunity from tort liability . . . .' "[10] Thus, the legislative intent underlying the second sentence of § 7 could merely have been to "affirm" the state's preëxisting absolute sovereign immunity, rather than to codify common-law exceptions to governmental immunity. Strict uniformity of immunity among all levels of government is not clearly mandated by § 7. *Ross v Consumers Power (On Rehearing),* 420 Mich 567, 666-667; 363 NW2d 641 (1984) (LEVIN, J., dissenting in part).

Moreover, this Court has previously rejected the argument that § 7 "froze" the case-law precedent of governmental immunity. As stated in *Parker v Highland Park,* 404 Mich 183, 192; 273 NW2d 413 (1978):

> [T]o read the second sentence of MCL 691.1407; MSA 3.996(107) as "preserving for all time state governmental immunity heretofore recognized by case law" would be to "assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government." [Quoting *Thomas v State Hwy Dep't,* 398 Mich 1, 17, n 4; 247 NW2d 530 (1976) (KAVANAGH, C.J., dissenting).[11] Citation omitted.]

---

[10] *Ross,* n 3 *supra,* p 665 (LEVIN, J., dissenting) (quoting Cooperrider, n 6 *supra,* p 277).

[11] In *Thomas,* the Court held that the test for whether an activity is within the exercise or discharge of a governmental function must be determined by case-law precedent as it stood prior to 1965. This analysis, similar to today's historical analysis of common-law exceptions to governmental immunity, was rejected in *Parker* and *Ross, supra,* pp 609-610. In *Parker, supra,* p 198, the question was whether the operation of a hospital is a governmental function. Despite two pre-1965 decisions holding that the operation of a hospital is a governmental function, the Court held it was not bound by those decisions, declining to follow the rationale of *Thomas* that the second sentence of § 7 affirmed "case-law precedent on the subject of the state's immunity." Today, however, the Court feels bound by an historical analysis which leaves open the possibility of finding public and nuisance per se exceptions to governmental immunity. As Justice COLEMAN observed in *Pinchette v Manistique Schools,* n 6 *supra,* p 291 (1978) (affirming in part and dissenting in part):

Contrary to the historical approach employed in the *Hadfield* plurality opinion, this Court has repeatedly stated that the act constitutes a " 'broad grant of immunity' with 'four narrowly drawn statutory exceptions.' "[12] The historical approach adopted by the majority today leaves ajar the door to additional immunity exceptions that cannot be fairly culled from the language of § 7.

Significantly, this Court has previously examined whether an intentional-tort exception exists under the act. In finding that there is no such exception, the Court in *Smith v Public Health Dep't,* 428 Mich 540; 410 NW2d 749 (1987),[13] did

---

As I see it, our problem derives from a desire to circumvent the governmental immunity statute—or eliminate it in effect. To this end, the Court has contrived to establish by-paths (e.g., some theories of nuisance . . .).

[12] *Hadfield, supra,* p 146; *Ross,* n 3 *supra,* p 618; *Reardon v Mental Health Dep't,* 430 Mich 398, 412; 424 NW2d 248 (1988); *Smith, supra,* pp 591-592; *Thomas,* n 6 *supra,* p 9, n 3; *Pittman v City of Taylor,* 398 Mich 41, 62; 247 NW2d 512 (1976) (COLEMAN, J.); *Pinchette,* n 6 *supra,* p 277.

The four statutory exceptions are MCL 691.1402; MSA 3.996(102) (highway repair); MCL 691.1405; MSA 3.996(105) (negligent operation of government-owned motor vehicle); MCL 691.1406; MSA 3.996(106) (public buildings); MCL 691.1413; MSA 3.996(113) (proprietary function).

A fifth statutory exception was added by 1986 PA 175, MCL 691.1407(4); MSA 3.996(107)(4) (ownership or operation of a hospital or county medical care facility).

Aside from these five narrow statutory exceptions, a governmental agency may be liable for an unconstitutional taking. Const 1963, art 10, § 2. See *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970). See also *Hadfield, supra,* pp 168-169. Whether a governmental agency enjoys immunity for a violation of the Takings Clause, however, is a separate question from whether § 7 preserves common-law exceptions to governmental immunity.

[13] The lead opinion was authored by Justice BRICKLEY and joined by Chief Justice RILEY. A separate opinion, authored by Justice BOYLE and joined by Justice CAVANAGH, "concur[red] with Justice BRICKLEY's conclusion that . . . the allegation of a common-law intentional tort does not avoid statutory immunity per se . . . ." *Smith, supra,* p 637.

.

not resort to any "historical analysis" of common-law exceptions to governmental immunity. Instead, the Court stated:

> In order to now decide whether to recognize any form of intentional tort exception to the governmental immunity act, this Court must first determine whether the Legislature intended the term "tort liability" in § 7 of the act to exclude intentional torts. We conclude that nothing on the face of the statute indicates an intent to create such an exception. [*Id.*, p 602.]

As in the case of intentional torts, there is nothing on the face of the statute which indicates a legislative intent to create an exception for nuisance.[14] Thus, under the analysis set forth in *Smith,* "[i]t only remains then to decide if an intentional tort can arise out of the exercise of a governmental function." *Id.*, pp 603-604.[15]

The primary purposes of the act were to restore immunity to municipalities in the wake of *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), and "halt this Court's attempts to abolish sover-

---

[14] See *Hadfield, supra,* p 147.

[15] In *Ross,* n 3 *supra,* p 620, the Court fashioned a new definition of "governmental function":

> [A] governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law. When a governmental agency engages in mandated or authorized activities, it is immune from tort liability, unless the activity is proprietary in nature (as defined in § 13) or falls within one of the other statutory exceptions to the governmental immunity act.

We invited the Legislature to modify our broad definition in the event that it did not reflect the Legislature's intent regarding the scope of immunity. *Id.*, p 621. The Legislature subsequently adopted the *Ross* definition practically verbatim. 1986 PA 175. "In so doing, the Legislature put its imprimatur on the broad scope of immunity as defined in *Ross* and, by implication, the narrow scope of its exception." *Reardon v Mental Health Dep't,* n 12 *supra,* p 412.

eign and governmental immunity."[16] The first sentence of § 7 achieves uniform immunity to the extent that all levels of government enjoy immunity *when engaged in the exercise or discharge of a governmental function.* However, the Legislature made clear in the second sentence that the *state's* preëxisting immunity was not to be modified or restricted regardless of the governmental function limitation in the first sentence. As Justice LEVIN observed in *Ross, supra,* pp 668-670, three years after *Williams* abrogated the common-law immunity of municipalities:

> [T]he Legislature enacted the governmental tort liability act. The primary purpose of the act, which, "was drafted by a special committee of the Michigan Association of Municipal Attorneys and lobbied through the legislature with the strong backing of that association's parent organization, the Michigan Municipal League," appears to have been to restore immunity to non-sovereign governmental units.
>
> To achieve this purpose, the Legislature provided in the first sentence of § 7 that "[e]xcept as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." The act thereby conferred uniform statutory immunity on all governmental entities— both the state and non-sovereign political units alike—*when engaged in the exercise or discharge of a "governmental function."*
>
> To make clear that, by restoring to municipal corporations immunity for governmental functions and making uniform the immunity of all govern-

---

[16] *Hyde v Univ of Michigan Regents,* 426 Mich 223, 244; 393 NW2d 847 (1986); *Thomas,* n 6 *supra,* p 10; *Maki v East Tawas,* 385 Mich 151, 164, n 3; 188 NW2d 593 (1971) (WILLIAMS, J., dissenting); Littlejohn & DeMars, *Governmental immunity after* Parker *and* Perry: *The king can do some wrong,* 1982 Det C L R 1, 5; *Ross,* n 3 *supra,* p 605.

*mental entities for governmental functions, it was
not thereby waiving the state's common-law abso-
lute sovereign immunity for non-governmental
functions, the Legislature provided in the second
sentence of § 7 that "[e]xcept as otherwise provided
herein, this act shall not be construed as modify-
ing or restricting the immunity of the state from
tort liability as it existed heretofore, which immu-
nity is affirmed." The "which immunity is af-
firmed" clause codified the state's common-law
sovereign immunity from tort liability—an abso-
lute immunity except to the extent it is waived by
the Legislature. [Emphasis added.]*

In my opinion, the fundamental purposes of the
act were to restore immunity to municipalities,
grant immunity to all levels of government when
engaged in the exercise or discharge of a govern-
mental function, and prevent judicial abrogation of
governmental and sovereign immunity. The second
sentence of § 7 was merely intended to prevent
further erosion of the *state's* common-law immu-
nity, rather than preserve any common-law excep-
tions to *governmental* immunity. Under this anal-
ysis, unless the activity of a municipality falls
within one of the five narrowly drawn statutory
exceptions,[17] the only question remaining in these
cases is whether the activity is a "governmental
function," as defined by the Legislature.[18]

For these reasons, and because, in any event,
plaintiffs failed to preserve for appeal the question

[17] MCL 691.1402; MSA 3.996(102) (highway repair); MCL 691.1405;
MSA 3.996(105) (negligent operation of government-owned motor
vehicle); MCL 691.1406; MSA 3.996(106) (public buildings); MCL
691.1413; MSA 3.996(113) (proprietary function); MCL 691.1407(4);
MSA 3.996(107)(4) (ownership or operation of a hospital or county
medical care facility).

[18] "Governmental function" is an activity which is expressly or
impliedly mandated or authorized by constitution, statute, local
charter or ordinance, or other law. [MCL 691.1401; MSA
3.996(101).]

whether either nuisance per se or public nuisance is a common-law exception to governmental immunity, I would not remand these cases to the Court of Appeals.

LEVIN, J. (*separate opinion*). The majority declares that "intentional nuisance" is not a recognized common-law exception to governmental immunity,[1] and that the cases are remanded to the Court of Appeals "to consider the existence of nuisance per se and public nuisance exceptions to immunity, and their applicability to these cases if, and to the extent that, they were properly raised before the Court of Appeals."[2]

I agree with the majority that nuisances have not been classified on the basis of whether they are intentional or unintentional. Accordingly, there being no separate category of intentional nuisance, there is no need to decide whether there is an intentional nuisance exception to governmental immunity.

Nuisance per se and public nuisance are recognized categories of nuisance. While the majority remands the cases for a determination of whether those categories of nuisance are exceptions to immunity, it opines that "any case-law exceptions devised after [July 1, 1965, the effective date of the governmental tort liability act,] would not escape governmental immunity."[3] The question whether there is a nuisance per se or public nuisance exception to governmental immunity should be decided in a case where the court concludes that factually there is a nuisance per se or a public nuisance.

The Court states that the negligence per se and

---

[1] *Ante*, p 587.

[2] *Ante*, p 596.

[3] *Ante*, pp 592-594.

public nuisance issues can only be considered by the Court of Appeals on remand if "they were properly raised before the Court of Appeals."[4] It is, however, for the Court of Appeals in the first instance to decide to what extent issues need to be properly raised and what constitutes properly raising them before that Court. We would, I think, all agree that the decisions of this Court on the nuisance "exception" to governmental immunity have not been crystal clear. In that context, the Court should be cautious about suggesting or deciding to what extent preservation of a precise category of nuisance is required.

Public nuisance is a long-recognized category of nuisance. The majority adopts the historical approach[5] without indicating what authority there may be for the notion that a public nuisance committed by government is historically immune.[6]

Interference with use of a public highway or waterway is a public nuisance, historically. The plaintiffs in *Li* were using a public highway. The plaintiff's decedent in *Garcia* may have been using a public waterway. The common-law tradition is to decide cases, i.e., the facts and the law, together. The facts inform the decision on the law.

---

[4] *Ante,* p 596.

[5] "We adopt the historical approach endorsed by a majority of this Court in *Hadfield" v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988). *Ante,* p 594.

[6] Courts in other jurisdictions held, before July 1, 1965, that a governmental entity was subject to liability for personal injury caused by a nuisance although the injury was suffered on property owned by the government, and there was no trespass by the government on private property. *Johnson v Tennessean Newspaper, Inc,* 192 Tenn 287; 241 SW2d 399 (1951); *Lehmkuhl v Junction City,* 179 Kan 389; 295 P2d 621 (1956).