609 N.W.2d 174 (2000)
CS & P, INC., d/b/a Lasercolor Presentations, 3-S Construction, Inc., and LBL Investments, Plaintiffs-Appellees,
v.
CITY OF MIDLAND, Defendant-Appellant.
The Cincinnati Insurance Company, as subrogee of CS & P, Inc., d/b/a Lasercolor Presentations, Plaintiff-Appellee,
v.
City of Midland, Defendant-Appellant.
Nos. 112921, 112922, COA Nos. 192303, 192304.
Supreme Court of Michigan.
January 8, 2000.
On order of the Court, leave to appeal having been granted and the Court having considered the briefs and oral argument of counsel, the order of October 1, 1999 which granted leave to appeal is VACATED and leave to appeal is DENIED because the Court is no longer persuaded the questions presented should be reviewed by this Court.
CORRIGAN, J. (concurring).
In my view, the Court has properly vacated the grant of leave to appeal. Although this Court granted leave to address the question whether negligence in an element of the trespass-nuisance exception to governmental immunity, I cannot overlook a more fundamental question brought to this Court's attention by amicus curiae, the Michigan Municipal League. Amicus argued that the second sentence of M.C.L. § 691.1407(1); MSA 3.996(107)(1) "compels the conclusion that there is no trespass nuisance exception to a city's governmental immunity...." On its face, this argument seems to have considerable merit. Accordingly, I am persuaded that we should not address the finer points of the trespass-nuisance exception without first reconsidering the question whether there is statutory authority for the trespass-nuisance exception in the plain language of the governmental tort liability act, M.C.L. § 691.1401 et seq., MSA 3.996(101) et seq. Because the parties have not briefed the question, however, this case does not present such an opportunity.
The first subsection 7 of the governmental tort liability act provides as follows:
Except as otherwise provided in this act, all governmental agenciesshall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1); MSA 3.996(107)(1) (emphasis added).]
Section 1 of the act contains the following definitions:
(c) "State" means the state of Michigan and its agencies, departments, commissions, courts, boards, councils, statutorily created task forces, and shall include every public university and college of the state, whether established as a constitutional corporation or otherwise.
(d) "Governmental agency" means the state, political subdivisions, and municipal corporations. [MCL 691.1401; MSA 3.996(101).]
Despite the plain language of §§ 1 and 7, which arguably suggest that the second sentence of § 7 was intended to apply only to the state of Michigan and not to inferior governmental agencies, a majority of the justices of this Court agreed in Hadfield v. Oakland Co. Drain Comm'r, 430 Mich. 139, 422 N.W.2d 205 (1988), that the second sentence of § 7 provided statutory authority for application of the common law trespass-nuisance exception to Oakland County, an inferior "governmental *175 agency." See Li v. Feldt (After Remand), 434 Mich. 584, 591, n. 7, 456 N.W.2d 55 (1990) (quoting portions of the various Hadfield opinions).
Two years later, in Li, supra at 590-594, 456 N.W.2d 55, this Court reaffirmed the view that the second sentence of § 7 provides statutory authority for application of the trespass-nuisance exception to a claim of immunity made by an inferior governmental agency. Dissenting from that view, Justice Griffin offered the following observation:
[N]either the plurality opinion in Hadfield, nor the majority opinion today, addresses the significance of the Legislature's use of the terms "governmental agencies" in the first sentence of § 7 and "state" in the second. A literal reading of the second sentence of § 7 seems, at most, to require an historical analysis of the state's common-law immunity. The significance of the Legislature's use of "governmental agencies" in the first sentence and the "state" in the second sentence is underscored by the definitions expressly given those terms in the act. "Governmental agency" is defined as "the state, political subdivisions, and municipal corporations." The "state," on the other hand, is defined as "the state of Michigan and its agencies, departments, [and] commissions...." The terms are not interchangeable. The statutory provision prohibiting modification or restriction of immunity is specifically applied to the "state," a term which does not embrace municipalities and other forms of lower government. Definitions supplied by the Legislature in the statute are binding on the judiciary. Thus, assuming arguendo that the second sentence of § 7 requires an historical analysis, it should be applied to the "state" and not other "governmental agencies."
The underlying premise of the Hadfield plurality opinion appears to be that the Legislature's intent to make uniform the immunity of all levels of government requires that the historical analysis purportedly required by § 7 applies to all levels of government, despite the express limitation of the purported historical analysis to "the state." [Li, supra at 598-600, 456 N.W.2d 55 (Griffin, J., dissenting).]
In my opinion, Justice Griffin's observations regarding the plain language of the statute are compelling and merit further attention by this Court.
In response to Justice Griffin's dissent, the Li majority offered a number of prudential and substantive arguments in favor of upholding the Hadfield interpretation of § 7. First, the majority relied on the doctrine of stare decisis, observing that "`in most matters it is more important that the applicable rule of law be settled than that it be settled right.'" Li, supra at 591, n. 7, 456 N.W.2d 55, quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting), as quoted in Abendschein v. Farrell, 382 Mich. 510, 517, 170 N.W.2d 137 (1969). The value of this aphorism is dubious where the "settled" case law is in direct conflict with the plain language of an applicable statute. A failure by this Court to adhere to the plain statutory language of § 7 would have perpetuated an ongoing "injury" to the scheme of governmental immunity intended by our Legislature. Accordingly, if such an error exists, it is possible that less harm would result from correcting it than would result from leaving it in place.
As substantive reasons in favor of upholding the Hadfield interpretations of § 7, the Li majority explained: (1) that the preamble to the governmental tort liability act evidenced an intent to treat "sovereign (state) and nonsovereign entities" alike; (2) that a legislator on the special committee drafting the act had explained that the committee "`sought to achieve legislation that would put all government on the same basis;'" (3) that "the nature of governmental immunity is such that there is no reason to treat the state and *176 local entities differently," citing Nicholson v. Detroit, 129 Mich. 246, 258-259, 88 N.W. 695 (1902); and (4) the Legislature would not have eliminated the longstanding trespass-nuisance exception without doing so "`in words incapable of being misunderstood,'" quoting Cooperrider, The court, the legislature, and governmental tort liability in Michigan, 72 Mich. L. R. 187, 279-280 (1973). Li, supra at 593, n. 8, 456 N.W.2d 55. At first look, I do not find these observations to be particularly persuasive. With respect to the preamble, I note that a preamble is not to be considered authority for construing an act. See Malcolm v. East Detroit, 437 Mich. 132, 143, 468 N.W.2d 479 (1991). With respect to the legislator's comment, I think the plain language of the act would supercede the expressed intent of one legislator. With respect to the "nature of governmental immunity" argument, I note that it is not the job of this Court, to question the wisdom of a statute. See, e.g., Jennings v. Southwood, 446 Mich. 125, 142, 521 N.W.2d 230 (1994). Finaly, with respect to the Cooperrider article, it is certainly arguable that the Legislature did limit the exceptions to governmental immunity in language "incapable of being misunderstood."
If the plain language of the second sentence of M.C.L. § 691.1407(1); MSA 3.996(107)(1) truly compels the conclusion that there is no trespass nuisance exception to a city's claim of governmental immunity, as was advanced by amicus curiae, but not by the parties in this appeal. then this Court should consider revisiting the issue when a more appropriate opportunity arises.
WEAVER, C.J. (concurring).
I concur in the order vacating the grant of leave to appeal and denying leave to appeal.
I would note that if the Court were to reconsider the interpretation of M.C.L. § 691.1407(1); MSA 3.996(107)(1), as suggested in Justice Corrigan's concurring statement, the Court should consider the following:
(1) whether to adopt Justice Griffin's dissent in Li v. Feldt (After Remand), 434 Mich. 584, 605, 456 N.W.2d 55 (1990), which finds that the disputed language "was merely intended to prevent further erosion of the state's common-law immunity, rather than preserve any common-law exceptions to governmental immunity," and
(2) whether trespass nuisance is not a tort within the meaning of the governmental immunity statutes, but rather an unconstitutional taking of property that requires just compensation even if the taking is temporary. As Chief Justice Riley noted in her opinion in Li v. Feldt, supra at 594, n. 10, 456 N.W.2d 55, "[t]he Taking Clause of the constitution rests at the foundation of the trespass-nuisance exception."[1] Accordingly, the statute providing governmental immunity for tort liability may not be implicated.
NOTES
[1] The majority in Li v. Feldt and the plurality opinion in Hadfield v. Oakland Co. Drain Comm'r, 430 Mich. 139, 422 N.W.2d 205 (1988), both cited Justice Ryan's discussion of the taking rationale in his dissent in Gerzeski v. Dep't of State Highway, 403 Mich. 149, 170, 268 N.W.2d 525 (1978):

In [intruding-nuisance] cases the potentially dangerous instrumentality or condition literally moves from government-owned land onto adjacent property. Consequently, the neighboring premises and its occupants are subject to either the creation of a risk foreign to the premises or direct and immediate injury. When this transpires the government effectively deprives an owner of the useful possession of that which he owns. This Court views such action as a public taking. Under this analysis the state is obliged to pay reasonable compensation for damages ensuing from such "taking" in accordance with the Constitution of the State of Michigan, Const. 1963, art. 10, § 2. [Citations omitted.]