LI v FELDT (ON SECOND REMAND)

Docket No. 129603. Submitted June 5, 1990, at Lansing. Decided
February 19, 1991, at 9:45 A.M. Leave to appeal granted, 437
Mich —.

Chen Li, a passenger in an automobile involved in an accident in
Ann Arbor, brought an action in the Washtenaw Circuit Court
against, inter alios, the City of Ann Arbor and two of its
engineers, Kenneth Feldt and John Robbins, alleging negli-
gence and intentional nuisance in the timing of the traffic light
at the intersection where the accident occurred. The court,
William F. Ager, J., granted summary disposition for the
defendants, ruling that the negligence claim was barred by the
statute of limitations and that the nuisance claim merely
restated the negligence claim. The Court of Appeals affirmed in
part and reversed in part, holding that the plaintiff had stated
a valid intentional nuisance claim and that intentional nui-
sance was an exception to governmental immunity. 162 Mich
App 767 (1987). The Supreme Court vacated the judgment of
the Court of Appeals and remanded the case to the Court of
Appeals for reconsideration in light of Hadfield v Oakland Co
Drain Comm'r, 430 Mich 139 (1988). 430 Mich 882 (1988). On
remand, the Court of Appeals reinstated its initial judgment,
and held that the intentional nuisance exception to governmen-
tal immunity had not been abrogated by Hadfield. 170 Mich
App 256 (1988). The Supreme Court reversed the decision of the
Court of Appeals, holding that intentional nuisance was not an
exception to governmental immunity, and remanded the case to
the Court of Appeals for consideration of whether nuisance per
se and public nuisance are exceptions to governmental immu-
nity, and of their applicability to this case if, and to the extent
that, they were properly raised in the Court of Appeals. 434
Mich 584 (1990).

On second remand, the Court of Appeals held:

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§§ 159, 171, 172; Nuisances §§ 35, 37-42.

Liability of highway authorities arising out of motor vehicle acci-
dent allegedly caused by failure to erect or properly maintain
traffic control device at intersection. 34 ALR3d 1008.

1. The issues of public nuisance and nuisance per se were properly before the Court of Appeals in light of the substance of the plaintiff's pleadings.

2. The governmental tort liability act preserved those judicially created exceptions to immunity which were formulated before July 1, 1965. Both nuisance per se and public nuisance, having been recognized as exceptions to governmental immunity in Michigan cases decided before that date, continue to be exceptions to immunity.

3. An interference with public convenience, such as obstructing a highway or a navigable stream or creating a condition which makes travel unsafe or highly disagreeable, may constitute a public nuisance. In this case, the plaintiff stated a claim of public nuisance in alleging that the improper timing of the traffic light at the intersection where the accident occurred rendered travel unsafe, and the trial court erred in summarily disposing of that claim.

4. A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Here, the question whether an improperly timed traffic light may constitute a nuisance per se must be determined by the trial court on remand.

Reversed and remanded.

1. GOVERNMENTAL IMMUNITY — EXCEPTIONS — PUBLIC NUISANCE — NUISANCE PER SE.

Public nuisance and nuisance per se are recognized exceptions to governmental immunity.

2. NUISANCE — PUBLIC NUISANCE — IMPROPERLY TIMED TRAFFIC LIGHTS.

A claim of public nuisance against a municipality having responsibility for the maintenance of a traffic light is stated where it is alleged that improper timing of the traffic light rendered travel unsafe.

*Pauline R. Rothmeyer,* for Chen Li.

*R. Bruce Laidlaw,* City Attorney, and *Kristen D. Larcom,* Assistant City Attorney, for Kenneth Feldt, John Robbins, and City of Ann Arbor.

Amicus Curiae:

*Schlussel, Lifton, Simon, Rands, Galvin & Jack-*

*ier, P.C.* (by *Jerold Lax*), for Michigan Municipal League.

ON SECOND REMAND

Before: SAWYER, P.J., and SHEPHERD and SULLI-
VAN, JJ.

SAWYER, P.J. This case is before us for decision on remand from the Supreme Court. We again reverse the decision of the trial court.

Plaintiff Chen Li was a passenger in an automobile driven by defendant Chou Yu-Feng Wong and owned by defendant Chu-Fen Wong. The Wong vehicle ran a red light and collided with a vehicle driven by defendant Becky Belknap, resulting in injuries to plaintiff. The accident occurred within the City of Ann Arbor.

Plaintiff filed the instant action on March 11, 1986. Among the defendants named were the City of Ann Arbor and two of its employees, Kenneth Feldt and John Robbins. It is the liability of these municipal defendants which is at issue in this appeal. In our initial decision, we affirmed the dismissal of plaintiff's negligence claim under the defective-highway exception to governmental immunity[1] on the basis of the running of the statute of limitations, but concluded that the trial court erred in granting summary disposition on plaintiff's intentional nuisance claim. *Li v Wong,* 162 Mich App 767; 413 NW2d 493 (1987).

The Supreme Court thereafter vacated the judgment of the Court of Appeals and remanded the case to this Court for reconsideration in light of *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988). *Li v Wong,* 430 Mich

---

[1] MCL 691.1402; MSA 3.996(102).

882 (1988). On remand, we concluded that *Hadfield* had not overruled precedent which recognized the intentional nuisance exception to governmental immunity and reinstated our prior decision reversing the grant of summary disposition on this claim. *Li v Wong (On Remand),* 170 Mich App 256; 428 NW2d 36 (1988).

The Supreme Court then granted leave to appeal and reversed, concluding that there is no intentional nuisance exception to governmental immunity. *Li v Feldt (After Remand),* 434 Mich 584; 456 NW2d 55 (1990). The Court did, however, remand the matter to us to consider the following questions:

> We remand these cases to the Court of Appeals to consider the existence of nuisance per se and public nuisance exceptions to immunity, and their applicability to these cases if, and to the extent that, they were properly raised before the Court of Appeals. [*Id.* at 596.]

We directed the parties to brief these questions. After considering the parties' briefs, we conclude that the issues are properly before the Court and that Michigan law recognizes the public nuisance and nuisance per se exceptions to governmental immunity.

We must first consider the question whether the issues of nuisance per se and public nuisance were properly raised before this Court. Not surprisingly, defendants argue that they were not, inasmuch as plaintiff pled an "intentional nuisance." However, this Court is not strictly bound by the label affixed to a claim, but may look beyond the label to determine the exact nature of the allegation made. *Randall v Harrold,* 121 Mich App 212, 217; 328 NW2d 622 (1982), citing *Anderson v Brown Bros,*

*Inc,* 65 Mich App 409, 422; 237 NW2d 528 (1975) (DANHOF, J., dissenting). See also *Young v Groenendal,* 382 Mich 456, 462; 169 NW2d 920 (1969). This is particularly true in the case at bar inasmuch as plaintiff never actually affixed the label "intentional nuisance" to the nuisance counts in her complaint.[2] The inequity of strictly holding plaintiff to having pled an intentional nuisance was recognized by Justice LEVIN in his separate opinion in *Li, supra* at 606-607:

> The Court states that the negligence per se and public nuisance issues can only be considered by the Court of Appeals on remand if "they were properly raised before the Court of Appeals." It is, however, for the Court of Appeals in the first instance to decide to what extent issues need to be properly raised and what constitutes properly raising them before that Court. We would, I think, all agree that the decisions of this Court on the nuisance "exception" to governmental immunity have not been crystal clear. In that context, the Court should be cautious about suggesting or deciding to what extent preservation of a precise category of nuisance is required.

With these thoughts in mind, we conclude that the issues of public nuisance and nuisance per se are properly before this Court in light of the fact that the nuisance issue itself was raised below. While plaintiff admittedly focused on "intentional nuisance" in the trial court and during the initial two appeals, that is hardly surprising in light of the fact that many of the nuisance exception cases were so labeled prior to the Supreme Court deci-

---

[2] The counts in the complaint are labeled by number, but not by title. While it is clear that the complaint was drafted with intentional nuisance in mind, the complaint generally alleges the existence of a nuisance.

sion in this matter.[3] The proper focus is not on the fact that plaintiff drafted her pleadings with an eye toward *intentional* nuisance, but on the substance of her pleadings and the fact that she did plead a *nuisance.* Given the uncertainty in this area, the fact that plaintiff initially focused on the wrong type of nuisance to label her claim is understandable and, more importantly, excusable.

Having concluded that the issues are properly before us, we now turn to the determination whether nuisance per se and public nuisance are exceptions to governmental immunity. While this area does, as Justice LEVIN noted, lack clarity, we nevertheless reach the conclusion that such exceptions are recognized in Michigan.

Nuisance was described by Justice TALBOT SMITH as "the great grab bag, the dust bin, of the law." *Awad v McColgan,* 357 Mich 386, 389; 98 NW2d 571 (1959). Prosser and Keeton describe nuisance as being an "impenetrable jungle" and "all things to all people." Prosser & Keeton, Torts (5th ed), § 86, p 616. While nuisance may be an impenetrable jungle, the issue of exceptions to governmental immunity for nuisance per se and public nuisance is more akin to an arid wasteland, with few landmarks to be found.

Recent cases from the Supreme Court lend little guidance in this area. The majority in *Li, supra,* expressly declined to consider the issue whether such exceptions to governmental immunity are recognized. Justice ARCHER expressed no opinion at all, merely concurring in the result reached by the majority. Justice GRIFFIN would find no nuisance exception whatsoever, disagreeing with the majority's "historical approach" to the issue of

---

[3] Justice BRICKLEY's opinion in *Hadfield, supra* at 172-173, n 14, lists a number of the opinions of this Court which dealt with the intentional nuisance exception.

judicially created exceptions to immunity. In his separate opinion, Justice LEVIN, *Li, supra* at 607, while stopping short of explicitly stating that a public nuisance exception is recognized, does suggest such a conclusion:

> Public nuisance is a long-recognized category of nuisance. The majority adopts the historical approach without indicating what authority there may be for the notion that a public nuisance committed by government is historically immune.[6]
>
> Interference with use of a public highway or waterway is a public nuisance, historically. The plaintiffs [sic, plaintiff] in *Li* were using a public highway. The plaintiff's decedent in *Garcia* may have been using a public waterway. The common-law tradition is to decide cases, i.e., the facts and the law, together. The facts inform the decision on the law.

---

[6] Courts in other jurisdictions held, before July 1, 1965, that a governmental entity was subject to liability for personal injury caused by a nuisance although the injury was suffered on property owned by the government, and there was no trespass by the government on private property. *Johnson v Tennessean Newspaper, Inc,* 192 Tenn 287; 241 SW2d 399 (1951); *Lehmkuhl v Junction City,* 179 Kan 389; 295 P2d 621 (1956).

---

Turning to *Hadfield, supra,* the plurality opinion by Justice BRICKLEY specifically declined to address the issue whether there are nuisance per se or public nuisance exceptions to governmental immunity. *Id.* at 170, 175. The plurality opinion did note, however, that there was some basis in precedent for making such a conclusion. *Id.* at 145, 174-177.

Justice BOYLE, however, specifically concluded in her concurring opinion that there are nuisance per se and public nuisance exceptions to governmental immunity:

Prior to 1964, this Court had occasion to declare a public nuisance created by the state and to order its abatement. *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913) (disposing of raw sewage in a river); *Trowbridge v City of Lansing,* 237 Mich 402; 212 NW 73 (1927) (decaying garbage in a "piggery"). In both of these cases, the interference was not only with the property and personal rights of the persons affected, but also with the rights of a large community of people.

Presumably, this Court, after recognizing the remedy of abatement against the government for a public nuisance, would not deprive a private individual who suffered special harm because of the same nuisance from a remedy well established at common law. It should follow that the public nuisance remedy, even where not based on invasion of another's property rights, is an exception to governmental immunity.

A nuisance per se is also an exception to governmental immunity. Nuisance per se is but a category of proof which may establish an invasion of public or private rights. Nuisance per se or at law is defined in Michigan as an activity or condition which constitutes a nuisance without regard to the care with which it is conducted or the circumstances under which it exists. *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959)

\* \* \*

In other words, unlike the nuisance in fact, nuisance per se is not predicated on the want of care, but is unreasonable by its very nature. Accordingly, "[i]n the few instances wherein the Legislature or this Court may label a condition or activity patently unreasonable by its very nature, the state may not circumvent its liability in connection with the situation or operation by raising the shield of sovereign immunity." *Gerzeski v State Hwy Dep't,* 403 Mich 149, 169; 268 NW2d 525 (1978) (Ryan, J., dissenting). To hold otherwise, would allow the state an absolute right to

use its property in any manner it may choose
without regard for the public at large or private
persons. *Id.* [*Hadfield, supra* at 206-208.]

Similarly, Justice LEVIN, in his separate opinion,
expressed agreement with Justice BOYLE's conclu-
sion "that the governmental tort liability act does
not preclude a damage action for loss caused by a
public nuisance or a nuisance per se." *Id.* at 209.
Furthermore, Justice ARCHER would have found
all nuisances, including nuisance per se, to be an
exception to governmental immunity. *Id.* at 213.
Finally, Justice GRIFFIN did not participate in the
*Hadfield* case.[4]

Any discussion of nuisance and governmental
immunity must include consideration of the Su-
preme Court's opinions in *Rosario v City of Lans-
ing,* 403 Mich 124; 268 NW2d 230 (1978), and
*Gerzeski, supra.* Caution must be exercised, how-
ever, in looking at those opinions because those
cases were decided after the adoption of the gov-
ernmental tort liability act in 1964,[5] but prior to
the Supreme Court's commitment to the "histori-
cal analysis" approach to the viability of judicially
created exceptions to immunity in *Hadfield, supra.*
See *Li, supra* at 591, n 7.

In *Rosario, supra* at 133, n 7, Justice FITZGER-

_____

[4] Justice GRIFFIN's partial concurrence/dissent in *Li, supra,* does
not directly indicate where he stands on this issue. Justice GRIFFIN's
opinion expressed his disagreement with the majority's use of a
"historical analysis" in determining the continuing validity of judi-
cially created exceptions to governmental immunity. Instead, Justice
GRIFFIN would look to the statute alone to determine whether a
municipality would be immune while engaged in a governmental
function. *Id.* at 605. Accordingly, Justice GRIFFIN would presumably
conclude that no nuisance is an exception to governmental immunity.
However, it is not clear whether Justice GRIFFIN would concede that
nuisance per se and public nuisance are exceptions to governmental
immunity under the "historical analysis" approach of the *Li* majority,
which we are obligated to apply.

[5] 1964 PA 170.

ALD, writing for the three-justice plurality, noted that there existed some form of nuisance exception to immunity, though the limits of the exception "present the more difficult question." In reaching the conclusion that some form of nuisance exception existed, Justice FITZGERALD relied on *Pennoyer v Saginaw,* 8 Mich 534 (1860). The plurality, however, ultimately concluded that a "nuisance in fact" constituted an exception to governmental immunity. *Rosario, supra* at 138-139.[6] Justice MOODY, joined by Justice WILLIAMS, of course, adopted the intentional nuisance analysis in *Rosario,* which has now been expressly rejected by the Supreme Court. Justice RYAN, joined by Justice COLEMAN, employed a historical analysis,[7] reaching the conclusion that the nuisance exception to governmental immunity was recognized, but only with respect to "nuisances per se" and "intruding nuisances" (Justice BRICKLEY's "trespass nuisance" in *Hadfield, supra*). *Rosario, supra* at 146-147. The positions of the justices in *Rosario* were reasserted in *Gerzeski, supra,* which was decided the same day.

From the above, we can only conclude that the recent opinions of the Supreme Court fall short of resolving the question before us.[8] Thus, we must extend our historical analysis to the pre-1964 case law.

In concluding that public nuisance constituted an exception to governmental immunity, Justice

[6] However, Justice FITZGERALD's observation that the "implication that only nuisances *per se* were outside governmental immunity was not well-grounded in prior case law," *id.* at 135, is suggestive that he assumed that nuisances per se were, in fact, exceptions to immunity.

[7] *Thomas v Dep't of State Hwys,* 398 Mich 1, 10; 247 NW2d 530 (1976), was the authority relied upon by Justice RYAN in *Rosario* for employing a historical analysis.

[8] Though it should be noted that, as recently as 1988 in *Hadfield, supra,* at least three justices would recognize nuisances per se and public nuisances as exceptions to governmental immunity.

Boyle in her concurrence in *Hadfield, supra,* re-
lied on *Attorney General ex rel Wyoming Twp,
supra,* and *Trowbridge, supra.* Both of these cases,
however, involve actions in equity. *Attorney Gen-
eral ex rel Wyoming Twp* involved an action to
abate a nuisance, namely, the City of Grand Rap-
ids' plan to dump night soil and other refuse into
the city sewer system, which discharged into the
Grand River.[9] A city's garbage disposal system was
also at issue in *Trowbridge, supra,* which also
involved a bill in equity. In *Trowbridge,* the City of
Lansing had purchased land in Eaton County and
established a piggery, upon which it maintained a
large number of hogs which were fed garbage
collected by the city. An action was brought to
abate the nuisance. While these cases recognized
an action against the government, they both were
actions in equity, not at law. As Justice Brickley
noted in *Hadfield, supra* at 174, n 15, it is ques-
tionable whether cases in equity can be cited in
support of finding an exception to governmental
immunity.

An additional case which might support the
conclusion that there is a public nuisance excep-
tion to governmental immunity is *Pound v Garden
City School Dist,* 372 Mich 499; 127 NW2d 390
(1964). *Pound* presents a clearer case for recogniz-
ing such an exception than do *Attorney General
ex rel Wyoming Twp* and *Trowbridge* in that
*Pound* involved an action for damages. Specifically,
the plaintiff in *Pound* was injured when she
slipped on a sidewalk which had been coated with
ice. The ice had resulted from water which drained
from the defendant's roof through a downspout

---

[9] Apparently, such night soil and other refuse was already being
discharged into the river. However, Grand Rapids apparently planned
to take the material collected from residences not connected to the
sewer system and introduce the material into the sewer system rather
than using a landfill, as had been the practice.

and into a cement culvert which discharged onto the sidewalk. The Court concluded that the defendant could not avail itself of the defense of governmental immunity.

In *Hadfield,* Justice BRICKLEY acknowledges that *Pound* might serve as the basis for finding a public nuisance exception to governmental immunity. *Hadfield, supra* at 175-177. Justice BRICKLEY did note, however, one potential problem with relying on *Pound* for this conclusion. *Hadfield, supra* at 176, n 17. Specifically, under the historical analysis method, the only judicially created exceptions to immunity which are recognized are those established in the case law prior to the enactment of the governmental tort liability act, 1964 PA 170. As Justice BRICKLEY explains, 1964 PA 170 was introduced in the Senate on February 6, 1964, passed by the Senate on March 24, passed by the House with amendments on April 22, and signed by the Governor on May 19, 1964. *Pound* was decided in the middle of this process, on April 6. Thus, *Pound* was not part of the case law of governmental immunity when the bill was introduced.

We do not, however, believe it important under the historical analysis method to limit the acceptance of judicially created exceptions to immunity to those cases decided before the introduction of the bill. The principle underlying the historical analysis method is that the Legislature adopted the case law precedent when it enacted the governmental tort liability act. *Hadfield, supra* at 147-148; see also *Thomas v Dep't of State Hwys,* 398 Mich 1, 11; 247 NW2d 530 (1976). *Pound* was decided prior to the enactment of the final amendments of 1964 PA 170. We presume that the Legislature was aware of the *Pound* decision. Accordingly, we must also presume that the Legisla-

ture felt no need to modify the pending bill to exclude *Pound.* Therefore, *Pound* must have been part of the case law adopted by the Legislature.

Turning to the issue of a nuisance per se exception to governmental immunity, Justice BOYLE's opinion in *Hadfield* again relies upon *Attorney General ex rel Wyoming Twp* and *Trowbridge,* as well as *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936). As Justice BRICKLEY noted in *Hadfield, supra* at 175, *Royston* has been subject to various interpretations. Moreover, while *Royston* was an action at law, rather than in equity, its recognition of a nuisance per se exception to governmental immunity is dicta in that the Court ultimately found that no nuisance was presented in *Royston.* Nevertheless, the Court in *Royston, supra* at 260, did recognize such an exception:

> Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded.

Finally, we should note that exceptions to governmental immunity for nuisances other than a trespass-nuisance were recognized in other jurisdictions prior to 1964 PA 170. See *Li, supra* at 607, n 6 (LEVIN, J., writing separately). However, we are not persuaded that we can look beyond Michigan case law in applying the historical analysis method. While it may be concluded, as it was by the majority in *Li, supra,* that the Legislature affirmed the existing case law in enacting the governmental immunity act, it would seem substantially less likely that the Legislature intended to also adopt the case law of foreign jurisdictions. Rather, it seems reasonable to conclude that the Legislature merely adopted the *Michigan* case law on governmental immunity.

From the above discussion, we can conclude that the "impenetrable jungle" is not nuisance, but governmental immunity. The case law and the opinions of the various justices are less than crystal clear in this area. However, it is clear that actions involving both public nuisance and nuisance per se have historically been brought against the government, and those cases were not dismissed on immunity grounds. Moreover, much discussion of nuisances per se and public nuisances can be found in the case law, supporting both sides of the proposition.[10] Ultimately, however, we are persuaded by the reasoning of Justice BOYLE in *Hadfield, supra.* Accordingly, we conclude that, under the historical analysis method, nuisances per se and public nuisances constitute exceptions to governmental immunity.[11]

Our task, however, is not complete as we must apply that conclusion to the case before us. That is, we must answer the question whether an ill-timed traffic light may be considered a nuisance per se or a public nuisance.[12] Turning first to public nuisance, Prosser & Keeton, Torts (5th ed), § 90, pp 643-645, describe a public nuisance as follows:

> No better definition of a public nuisance has been suggested than that of an act or omission "which obstructs or causes inconvenience or damage to the public in the exercise of rights common

---

[10] Indeed, the issue will undoubtedly have to be ultimately resolved by the Supreme Court.

[11] We are, admittedly, somewhat more comfortable with this conclusion in the area of public nuisance rather than nuisance per se, given the stronger precedent presented by *Pound, supra,* than *Royston, supra.*

[12] We need not determine, of course, whether the light is, in fact, a nuisance inasmuch as this case comes before us from a grant of summary disposition. We need only determine whether plaintiff has stated a claim which sounds in nuisance.

to all Her Majesty's subjects." The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. It includes interferences with the public health, as in the case of a hogpen, the keeping of diseased animals, or a malarial pond; with the public safety, as in the case of the storage of explosives, the shooting of fireworks in the streets, harboring a vicious dog, or the practice of medicine by one not qualified; with public morals, as in the case of houses of prostitution, illegal liquor establishments, gambling houses, indecent exhibitions, bullfights, unlicensed prize fights, or public profanity; with the public peace, as by loud and disturbing noises, or an opera performance which threatens to cause a riot; with the public comfort, as in the case of bad odors, smoke, dust and vibration; with public convenience, as by obstructing a highway or a navigable stream, *or by creating a condition which makes travel unsafe or highly disagreeable,* or the collection of an inconvenient crowd; and in addition, such unclassified offenses as eavesdropping on a jury, or being a common scold. [Emphasis added.]

Plaintiff's complaint does, in fact, plead that the traffic light at the intersection where the accident occurred was improperly programmed, and that such improper programming of the light renders travel unsafe.[13] If plaintiff is able to establish her

[13] Plaintiff's amended complaint alleges, inter alia, the following:

57. That the City of Ann Arbor maintains a traffic signal at the intersection of Pontiac Trail and Barton Drive in the City of Ann Arbor which is programmed by employees of the City to cycle the traffic signals in a certain manner, that the programming is an intentional act and this act creates a condition at that intersection which is hazardous to those who used the intersection and to Plaintiff in particular, and as such creates a nuisance;

58. That the programming to set the cycle is a deliberate

allegations, then she can establish a claim under public nuisance. That is, we conclude that an improperly timed traffic light can constitute a public nuisance.[14] While it is not entirely clear what plaintiff claims to be the nature of the improper programming of the light, apparently the claim rests on the concept that the light does not cycle on green long enough to allow traffic to clear the intersection, causing cars to run the red light. If, in fact, a traffic signal is programmed in such a way that it leads to drivers failing to heed a red light, then it certainly creates a condition which can make travel unsafe, and, therefore, constitutes a public nuisance.[15] Accordingly, we conclude that plaintiff did, in fact, state a claim sounding in public nuisance and, therefore, summary disposition was inappropriate.

Turning to the question whether the improperly timed traffic light constitutes a nuisance per se, that question presents a more difficult situation. The Supreme Court discussed the definition of

intentional act on the part of the city that causes hazardous conditions for users of the highway including the plaintiff passenger in that it does not allow adequate time for drivers to traverse the intersection.

[14] Of course, we do not determine that an improperly timed light does, in fact, constitute a nuisance, or that the light involved in the case at bar is a nuisance. These are questions of fact for the jury.

[15] We can envision at least two circumstances which could potentially arise in this area. First, as what is apparently plaintiff's position here, the light cycles too short on green, not allowing all cars which were stopped for the red light to traverse the intersection. This could conceivably induce drivers to run the red light rather than stop and wait through a second cycle of the light. Second, and perhaps more apparently a nuisance, a light could also be set to cycle too short on yellow. That is, the light would not allow a driver traveling at the speed limit to react to the yellow light and safely bring his vehicle to a stop before entering the intersection or allow enough time for the driver to proceed through the intersection before the light cycles to red. In either case, cars would be running red lights, creating a potentially dangerous condition.

nuisance per se in *Bluemer, supra* at 411, and quoted from 66 CJS, Nuisances, § 3, pp 733-734:

> "A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances *per se* is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens*."

Whether an improperly timed traffic light constitutes a nuisance per se is somewhat problematic. On the one hand, an improperly timed traffic light could certainly be unsafe, and therefore a nuisance, at all times.[16] On the other hand, signal lights are not by nature nuisances; indeed, they are rather useful and necessary devices when programmed and functioning properly. Thus, it is the circumstances surrounding the light which may render it a nuisance, considering such factors as the traffic congestion at the intersection and how the light is programmed. Accordingly, it would seem that an improperly timed traffic light is more like a nuisance per accidens than a nuisance per se.[17]

However, given this case's odyssey through the court system and that the focus of the parties and the trial court in arguing and deciding the sum-

---

[16] E.g., a traffic light which cycles immediately from green to red, without stopping at yellow, would always be unsafe since it would cause any number of cars to unintentionally run the red light.

[17] See *Buddy v Dep't of Natural Resources,* 59 Mich App 598, 601-602; 229 NW2d 865 (1975), which lists a number of cases in which a nuisance per se was found.

mary disposition motion was on intentional nuisance, it would be appropriate to allow the trial court to make the first determination of whether nuisance per se is a viable claim in the case at bar. By deferring to the trial court, the parties will have a better opportunity to directly address this issue and present their arguments to the court, as well as allow plaintiff to amend her pleadings as may be necessary.[18] Accordingly, while we conclude that nuisance per se is an exception to governmental immunity and any grant of summary disposition on this basis would be erroneous, the question whether plaintiff has stated a claim which constitutes a nuisance per se shall be addressed by the trial court on remand.

In summary, we conclude that public nuisance and nuisance per se are exceptions to governmental immunity, that the issues are properly before us, that plaintiff did state a claim under public nuisance, and that the argument that a claim is stated under nuisance per se is at least colorable enough to allow the claim to stand for now, with the issue directed to the trial court's determination on remand.

Again, we reverse the trial court's grant of summary disposition on plaintiff's nuisance claim and remand the matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.

---

[18] Of course, plaintiff may choose to abandon any claim of nuisance per se in light of our determination that she has stated a claim sounding in public nuisance. In any event, the trial court should also afford plaintiff the opportunity to amend her pleadings to more directly address either or both theories.