ASKWITH v CITY OF SAULT STE MARIE

Docket No. 129184. Submitted May 8, 1991, at Marquette. Decided
August 20, 1991, at 9:25 A.M.

Richard T. Askwith, as personal representative of the estate of
Paul P. Mullen, deceased, brought an action in the Chippewa
Circuit Court against the City of Sault Ste. Marie and two city
employees, alleging that the decedent's death following an off-
road vehicle accident on the grounds of the city's airport was
the result of wilful and wanton misconduct, gross negligence,
nuisance in fact, and nuisance per se. The court, Lowell R.
Ulrich, J., granted the defendants' motion for summary disposi-
tion on the basis of governmental immunity. The plaintiff
appealed, arguing that the case comes within the nuisance per
se and public nuisance exceptions to governmental immunity.

The Court of Appeals *held:*

The trial court properly granted the defendants' motion for
summary disposition.

1. Court of Appeals precedent requires holding that nuisance
per se and public nuisance are exceptions to governmental
immunity. However, those exceptions are inapplicable in this
case.

2. The drainage ditch into which the decedent overturned his
vehicle was not a nuisance per se, because it was not an act,
occupation, or structure that was a nuisance at all times and
under all circumstances. The ditch also was not a public
nuisance, because it did not present an unreasonable risk to
public safety in the use of the airport as an airport.

Affirmed.

SAWYER, J., concurring in part and dissenting in part, stated
that all claims of nuisance per se and public nuisance should
not be barred by the governmental immunity statute.

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability,
§§ 159, 163, 166, 168, 169; Nuisances §§ 18, 32-34, 40-42, 453.
Rule of municipal immunity from liability for acts in performance
of governmental functions as applicable to personal injury or
death as result of a nuisance. 56 ALR2d 1415.

1. NUISANCE — NUISANCE PER SE.

    A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under all circumstances, regardless of location or surroundings.

2. NUISANCE — PUBLIC NUISANCE.

    A public nuisance is an unreasonable interference with a right common to the general public; an unreasonable interference with a public right includes significant interference with the public safety.

3. NUISANCE — PUBLIC NUISANCE — REASONABLE INTERFERENCE WITH PUBLIC SAFETY.

    Public nuisance is not coextensive with any interference with public safety; the element of reasonableness must be considered, and a nonexhaustive list of factors that may be employed in determining reasonableness include: the degree of risk to safety presented, whether the plaintiff could have discovered and avoided the risk of harm, the reasonableness of expecting the plaintiff to avoid the risk, the utility or necessity of the condition or structure that allegedly constitutes a public nuisance, and whether the plaintiff was acting reasonably in engaging in the activity that gave rise to the injury.

*Bruce Cranham,* for the plaintiff.

*Butch, Quinn, Rosemurgy, Jardis, Bush, Burkhart & Strom, P.C.* (by *Paul L. Strom*), for the defendants.

Before: GRIFFIN, P.J., and SAWYER and WEAVER, JJ.

WEAVER, J. In this case, we are once again called upon to address the nuisance exceptions to governmental immunity. The trial court granted summary disposition in favor of defendants on the basis of a determination that defendants were immune from suit. Plaintiff now appeals, and we affirm.[1]

---

[1] With respect to the individual defendants, the trial court, in addition to finding them immune from suit, found that no facts had been pleaded or established that either had any responsibility over

Plaintiff's decedent was operating an off-road vehicle on the grounds of defendant city's municipal airport during the early morning hours of July 5, 1988. He apparently drove the vehicle along the runway and into a drainage ditch at the end of the runway, overturning the vehicle. Decedent was apparently rendered unconscious and was not discovered until the following evening. Decedent was transported to a hospital, where he later died.

Plaintiff commenced the instant action, alleging nuisance, wilful and wanton misconduct, and gross negligence. Plaintiff was later allowed to amend his complaint to add counts of nuisance in fact and nuisance per se. The trial court, however, nevertheless granted summary disposition in favor of defendants.

On appeal, plaintiff argues that the instant case comes within the nuisance per se and public nuisance exceptions to governmental immunity and, therefore, the trial court erred in granting summary disposition. We disagree.

This Court recently decided that nuisance per se and public nuisance are exceptions to governmental immunity. *Li v Feldt (On Second Remand)*, 187 Mich App 475; 468 NW2d 268 (1991). That decision was published after November 1, 1990, and this panel is therefore required to follow its holding. Administrative Order No. 1990-6, 436 Mich lxxxiv. Were we not so compelled, we would hold that all

---

the municipal airport where the accident occurred. We are cognizant that issues of individual immunity differ from immunity of the governmental entity itself. However, the parties do not address the immunity of the individuals separately from that of the city. In any event, plaintiff does not address the trial court's alternative finding that there were no facts to support the allegation that the individual defendants were responsible for the maintenance of the airport. Accordingly, we address only the issue of the city's entitlement to raise the immunity defense. Suffice it to say, we see no reason to reverse with regard to the individual defendants even if we were to address separately the issue of their liability.

claims of nuisance per se and public nuisance are barred by the governmental immunity statute. Further, we agree with Justice GRIFFIN's opinion in *Li v Feldt (After Remand)*, 434 Mich 584, 605; 456 NW2d 55 (1990), wherein he stated:

> In my opinion, the fundamental purposes of the act were to restore immunity to municipalities, grant immunity to all levels of government when engaged in the exercise or discharge of a governmental function, and prevent judicial abrogation of governmental and sovereign immunity. The second sentence of § 7 [MCL 691.1407; MSA 3.996(107)] was merely intended to prevent further erosion of the *state's* common-law immunity, rather than preserve any common-law exceptions to *governmental* immunity. Under this analysis, unless the activity of a municipality falls within one of the five narrowly drawn statutory exceptions, the only question remaining in these cases is whether the activity is a 'governmental function,' as defined by the Legislature.

However, Administrative Order No. 1990-6 requires that we follow the holding in *Li v Feldt (On Second Remand)*, *supra*. Accordingly, we need only determine whether those exceptions are applicable in the case at bar.

For the reasons expressed in the concurring opinion, we conclude that the nuisance per se and public nuisance exceptions to governmental immunity are inapplicable in the case at bar. Accordingly, the trial court properly granted summary disposition in favor of defendants.

Affirmed. Defendants may tax costs.

GRIFFIN, P.J., concurred.

SAWYER, J. *(concurring in part and dissenting in part)*. While the majority and I are in agreement on the disposition of this case, including the appli-

cation of *Li v Feldt (On Second Remand)*, 187 Mich
App 475; 468 NW2d 268 (1991),[1] to the facts of this
case, we disagree on whether *Li (On Second Re-
mand)* was correctly decided. The majority con-
cludes that it was not,[2] and follows it only because
they are obligated to do so under Administrative
Order No. 1990-6, 436 Mich lxxxiv; Mich Ct R, p A
1-45. See *ante,* at 3-4. However, I continue to
adhere to my opinion in *Li (On Second Remand)*.

The majority and I do, however, agree on the
application of *Li (On Second Remand)* to this case.
Turning to the issues upon which we all agree, we
need to determine whether the public nuisance

---

[1] In that case, we also held that raising the intentional nuisance
issue was sufficient to preserve the issue of public nuisance. *Li (On
Second Remand), supra* at 479. Accordingly, the issue of public
nuisance is properly before us in this appeal, even though plaintiff
may not have specifically used the label "public nuisance."

[2] The majority does not state their basis for disagreeing with *Li (On
Second Remand),* beyond stating their agreement with Justice GRIF-
FIN's partial dissenting opinion in *Li v Feldt (After Remand),* 434
Mich 584; 456 NW2d 55 (1990). While this Court may express its
agreement with a Supreme Court justice's dissenting opinion, we are
not privileged to follow it. Rather, we are obligated to follow the
majority's decision until such time as a majority of the Supreme
Court changes its position. See *People v Mitchell,* 428 Mich 364, 369-
370; 408 NW2d 798 (1987). This Court is not faced in the instant case,
nor was it in *Li (On Second Remand),* with the question whether
Justice GRIFFIN's interpretation of the governmental immunity stat-
ute or the *Li (After Remand)* majority's "historical approach" to the
statute represents the better view. Rather, we are obligated, as we
were in *Li (On Second Remand),* to apply the historical approach
adopted by the majority in *Li (After Remand).* Had Justice GRIFFIN's
view prevailed in *Li (After Remand),* our decision in *Li (On Second
Remand)* might well have been different. However, we were required
under the principle of stare decisis to apply the historical approach
adopted by the majority in *Li (After Remand),* resulting in the
conclusion that, under the historical approach, public nuisance and
nuisance per se are exceptions to governmental immunity. The major-
ity in the instant case is certainly free to reach the conclusion that
our application of the historical approach in *Li (On Second Remand)*
was flawed and offer their own analysis of why the historical ap-
proach compels the conclusion that public nuisance and nuisance per
se are not exceptions to governmental immunity. The majority,
however, offers no such analysis. Rather, they declare *Li (On Second
Remand)* to have been incorrectly decided on the basis of the analysis
contained in a minority opinion of the Supreme Court, an approach
that is inconsistent with the principle of stare decisis.

and nuisance per se exceptions are applicable in the case at bar. Considering nuisance per se first, the drainage ditch at the end of the runway in the instant case does not constitute a nuisance per se. A nuisance per se is an act, occupation, or structure that is a nuisance at all times and under all circumstances, regardless of location or surroundings. *Li (On Second Remand), supra* at 490-491; *Yarrick v Village of Kent City,* 189 Mich App 627, 633; 473 NW2d 774 (1991). A ditch is not an act, occupation, or structure, nor is it a nuisance at all times and under all circumstances. Indeed, drainage ditches can be rather useful and necessary things. Accordingly, it cannot be a nuisance per se. *Id.*

Turning to the public nuisance exception, while plaintiff's position under this exception is more tenable, it must nevertheless fail. A public nuisance can generally be described as an act or omission "which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects." *Li (On Second Remand), supra* at 488-489, quoting Prosser & Keeton, Torts (5th ed), § 90, p 643; see also *Yarrick, supra* at 630.

It would, however, be a mistake to read this description of public nuisance too broadly. As explained in 4 Restatement Torts, 2d, § 821B, p 87, a public nuisance "is an *unreasonable* interference with a right common to the general public." (Emphasis added.) Such an unreasonable interference with a public right includes significant interference with the public safety. *Id.* See also *Yarrick, supra* at 630.

This is not to say that any interference with public safety is sufficient to establish a public nuisance. If this were the case, then every case involving negligence by the government would

necessarily compel the conclusion that the public nuisance exception to immunity would be applicable. That is, any negligence by the government that results in injury to a plaintiff necessarily involves interference with the public safety. To conclude that *any* such interference with the public safety is tantamount to being a public nuisance would result in the exception consuming the rule. Clearly, the public nuisance exception is not so broad. The limitations on the exception are clearly expressed in the Restatement: the interference must be unreasonable.

In *Li (On Second Remand)* we concluded that the plaintiff could potentially make out a claim of public nuisance where the city allegedly maintained an improperly programmed traffic light.[3] If the allegation is true, then the condition could conceivably constitute a public nuisance. A traffic light is artificial in nature, installed by the city, for the purpose of promoting public safety in the use of a public thoroughfare. If maintained in an unsafe manner, it can interfere with public safety. Such interference would be unreasonable because it would hinder public safety when it is supposed to promote safety and it is certainly unreasonable to expect motorists to avoid the intersection and the improperly programmed traffic light.

In *Bronson v Oscoda Twp (On Second Remand),* 188 Mich App 679; 470 NW2d 688 (1991), on the other hand, we concluded that no public nuisance claim could be maintained. In *Bronson,* the plaintiff was injured when he dove into Lake Huron and hit a sand bar. The plaintiff alleged that the sand bar was formed because of the influence of a

---

[3] It should be noted that neither in *Li (On Second Remand)* nor in any of the cases following *Li* did we conclude that the condition was a public nuisance. Rather, we merely concluded that it is possible for the plaintiff to convince the trier of fact that the condition constitutes a public nuisance.

nearby pier maintained by the defendant. We concluded that, even if the pier did cause or influence the formation of the sand bar, it did not unreasonably or significantly interfere with the public's right to use Lake Huron. Only a small section of the lake was affected, and the area could have been inspected by the plaintiff to determine its unsuitability for diving and the diving activity moved to a safer location in the lake. *Bronson, supra* at 685. In short, any interference with safety in *Bronson* was not unreasonable given the fact that diving would not be safe in all areas of the lake anyway and the activity could easily and reasonably be moved to a more suitable location, unlike the case in *Li* where the motorist would have to avoid an entire intersection because of its alleged hazardous condition, not using it for the very purpose of its existence.

In *Yarrick, supra,* we concluded that whether a public nuisance existed depended at least in part on whether the hole in the ground into which the plaintiff stepped was naturally occurring or man-made, with the latter being necessary to establish a public nuisance. It is important to note that in *Yarrick* the hole was located in an area of the park maintained by the defendant designed for pedestrian use. Thus, a public nuisance could potentially be made out because it could be considered unreasonable to put a hole in an area intended for pedestrian use, thus unreasonably increasing the risk to users of the area.[4]

---

[4] A brief mention should be made at this point of two unpublished decisions of this Court to which plaintiff directs our attention, both of which were decided in light of *Li (On Second Remand).* In *Mendoza v Detroit,* unpublished opinion per curiam of the Court of Appeals, decided March 28, 1991 (Docket No. 116895), we concluded that an open, unguarded hole in a public park could constitute a public nuisance. Consistent with *Yarrick, Mendoza* involved a man-made hole in an area intended for pedestrian use, thus allowing a trier of

As can be seen by the decisions in *Li (On Second Remand)* and its progeny, public nuisance is not coextensive with any interference with public safety.[5] Rather, the element of reasonableness must be considered. The determination of reasonableness includes consideration of factors such as the degree of risk to safety presented,[6] whether the plaintiff could have discovered and avoided the risk of harm,[7] the reasonableness of expecting the plaintiff to avoid the risk,[8] the utility or necessity

---

fact to conclude that the defendant had unreasonably interfered with the safety of the users of the park. In *Johnson v East Detroit,* unpublished opinion per curiam of the Court of Appeals, decided March 27, 1991 (Docket No. 123556), we merely remanded for reconsideration in light of *Li (On Second Remand),* without addressing the applicability of the public nuisance. Again, however, the allegation involved that of a man-made hole, this time in a grassy berm between a street and a sidewalk.

[5] Additional examples of public nuisances are discussed in *Li (On Second Remand),* particularly in its quotation from Prosser & Keeton, *supra,* found in *Li (On Second Remand), supra* at 488-489.

[6] E.g., in *Li,* an improperly timed traffic light that gives rise to traffic accidents would present a high risk to the public safety.

[7] E.g., in *Li,* the possibility of a motorist determining for himself the fact that a traffic light is improperly programmed is remote. Indeed, it does not seem likely that motorists concern themselves with determining that traffic signals are properly programmed, relying instead upon the city to oversee that task. On the other hand, the plaintiff in *Bronson* could reasonably be expected to discover the advisability of diving in the area in question because basic water safety dictates an inspection of, and familiarity with, an area before diving into it. That is, it is reasonable to expect a diver to inspect a diving area, but it is not reasonable to expect motorists to examine the programming of each traffic signal before proceeding through an intersection.

[8] Again at opposite ends of the spectrum on this factor are *Li* and *Bronson.* It is unreasonable to expect motorists to avoid a danger posed by an improperly programmed traffic signal by not using an intersection. The sole purpose for the existence of the intersection, and the traffic signal for that matter, is use by the public for travel. Thus, the city can reasonably be expected to properly maintain the signal, including programming it correctly. On the other hand, it is not at all unreasonable to expect a diver to move his diving activities to a more suitable location. It would be patently unreasonable to expect the government to maintain a lake in such a way as to render an entire lake suitable for diving, particularly because this might well render the lake unsuitable for other, equally legitimate, uses (such as providing a shallow area for children to swim and play). Similarly, it

of the condition or structure that allegedly constitutes a public nuisance, and whether the plaintiff was acting reasonably in engaging in the activity that gave rise to the injury in the first place. This list should by no means be considered exhaustive. Further, the mere presence of one of these factors does not establish an unreasonable risk to public safety, nor does the absence of any of the factors preclude such a finding.

With regard to the final factor listed above, whether the plaintiff was reasonably engaged in the activity that gives rise to the injury, the case at bar presents a good example where that factor weighs heavily against the finding of a public nuisance. In *Li* and *Yarrick,* the plaintiffs were engaged in activities completely consistent with the intended use of the area where the injury arose, traveling along a public thoroughfare and walking through a park. Indeed, the reason for the existence of the road in *Li* and the park in *Yarrick* was to allow for the use made of them by the respective plaintiffs. This is not the situation in the case at bar, however.

In the instant case, plaintiff's decedent was not using the airport in a manner consistent with its purpose. In fact, plaintiff's decedent was engaged in a prohibited use of the airport, because off-road vehicles were excluded from the airport.[9] While the city can be expected to maintain the airport in a condition safe for its intended purpose, it cannot be expected to maintain it in a condition that is safe for all possible uses, particularly for prohib-

is not unreasonable that one small portion of the lake be put to a use that renders that portion unsuitable for other uses, such as diving.

[9] See, e.g., *Pound v Garden City School Dist,* 372 Mich 499, 502; 127 NW2d 390 (1964), which refused to draw a distinction between a plaintiff directly injured on his own premises by a governmental defendant and a plaintiff injured by a governmental defendant in a place "where he has a right to be."

ited uses. The purpose of an airport is, of course, to accommodate air travel.[10] Thus, the burden on the city is to maintain it in a condition safe for air travel and related activities. The fact that a condition of the airport may be unsafe for some other, unrelated, and uninvited activity does not constitute an unreasonable interference with the public safety.

Furthermore the fact that defendant city may not have been diligent in preventing the prohibited activity from occurring is irrelevant. The public, including plaintiff's decedent, can only reasonably expect that the airport be safe for use as an airport, not for other activities. In other words, because the airport did not exist for the purpose of operating off-road vehicles, either exclusively or as one of several uses, it need not be rendered safe for use by off-road vehicles. Had plaintiff's decedent been a pilot operating an aircraft that ran into the ditch, resulting in death or injury, perhaps because of a bad landing or takeoff, weather conditions, and so forth, then it might be possible to declare the ditch a public nuisance because it might then constitute an unreasonable risk to public safety in the use of the airport as an airport.[11] But this is not the case here.

For the above reasons, the public nuisance exception to governmental immunity is inapplicable in the case at bar and the trial court properly granted summary disposition in favor of defendants.

---

[10] The airport in question is apparently used for general aviation and private carriers. Commercial aviation is apparently accommodated at a different facility.

[11] This would, of course, have to be weighed against the utility or necessity of having a ditch in the location as well as other factors, such as standards for runway design.